794 F.2d 352
 122 L.R.R.M. (BNA) 2965, 55 USLW 2067
 Shirley J. CUTTER, Plaintiff-Appellee-Cross-Appellant,
v.
LINCOLN NATIONAL LIFE INSURANCE COMPANY, Lincoln National
Pension Insurance Company, Lincoln National Sale
Corporation, and Lincoln Financial and Insurance Sales
Corporation, Defendants-Appellants-Cross-Appellees.
 Nos. 85-5174, 85-5189.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1986.
Decided June 25, 1986.
 
 1
 Timothy Nimick, Sioux Falls, S.D., for defendants-appellants-cross-appellees.
 
 
 2
 Dennis C. McFarland and Scott C. Petersen, Sioux Falls, S.D., for plaintiff-appellee-cross-appellant.
 
 
 3
 Before ARNOLD and FAGG, Circuit Judges, and OLIVER,* Senior District Judge.
 
 
 4
 JOHN W. OLIVER, Senior District Judge.
 
 
 5
 Defendants appeal from entry of judgment on the jury verdict and the denial, in part, of their motion for judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, for a new trial. Jurisdiction is based on diversity, 28 U.S.C. Sec. 1332.
 
 
 6
 On Counts I and II, the jury returned a verdict of $50,000 for the plaintiff on both counts. Count I alleged wrongful discharge of the plaintiff from the Lincoln National Life Insurance Company in her employment as a sales agent. Count II alleged wrongful discharge of the plaintiff from the Lincoln National Pension Insurance Company in her employment as a sales agent.
 
 
 7
 On Counts III and IV, the jury returned a verdict for the defendants. Count III alleged wrongful termination of her employment as a manager for the defendant companies, and included allegations that the employer companies had violated procedural provisions governing termination which were set forth in the employee handbook. Count IV alleged tortious interference based on a claim that one of the defendants' employees had sexually harassed plaintiff.
 
 
 8
 On Count V, the jury returned a verdict for the plaintiff awarding $5,000 in nominal damages and $132,500 in punitive damages. Count V alleged tortious interference with plaintiff's business and professional affairs.
 
 
 9
 After hearing, the district court entered judgment n.o.v. on the $50,000 jury verdict based on Counts I and II. The district court denied defendants' motion for judgment n.o.v. as to the $5,000 nominal damage award and the $132,500 punitive damage award based on Count V of the complaint.
 
 
 10
 Defendants appeal the denial of judgment n.o.v. on Count V. Plaintiff has filed a cross-appeal challenging the district court's entry of judgment n.o.v. on Counts I and II.
 
 
 11
 For the reasons set forth below, this Court finds and concludes that the district court's grant of judgment n.o.v. on Counts I and II should be affirmed, and the district court's denial of judgment n.o.v. on Count V should be reversed.
 
 I.
 
 12
 In April, 1980, plaintiff Shirley Cutter accepted employment with defendants, the Lincoln National Companies, in their Sioux Falls office as an insurance sales agent. In April, 1982, plaintiff was offered vesting rights in the renewal commissions on the policies she had sold and would sell. Under this one-for-one vesting agreement, plaintiff was entitled to receive one year of guaranteed renewal commissions for each full year she was an agent with the defendant companies.
 
 
 13
 In May, 1982, plaintiff was promoted to district sales manager for the defendant companies. On November 12, 1982, plaintiff was orally notified that she was terminated both as district sales manager and as sales agent for the defendant companies. Within a week, she received written notification of her termination. Paragraph 5 of plaintiff's employment contract provided in part: "The Agent or the Company may terminate the Agent's appointment under this contract, with or without cause, by notice sent by ordinary mail to the last known address of the other party."
 
 
 14
 Shortly after she was terminated as an agent, defendant companies offered, and plaintiff accepted, a brokerage contract. As a broker, plaintiff could continue to sell and service defendants' insurance contracts. As a broker, she no longer was obligated to exclusively sell defendants' insurance products, she no longer worked in defendants' offices, and she did not maintain the one-for-one vesting rights she had when she was a sales agent. Prior to her termination, plaintiff had earned two years' worth of vested renewal commissions. Plaintiff was paid all vested renewal commissions which she had earned.
 
 
 15
 After plaintiff was terminated from her position as sales agent, and while she was acting as a broker for defendant companies, another of defendants' agents, Mark Malavolti, contacted Dakota Mack Company to update that company's group insurance policy information on their Lincoln National policy. Plaintiff had been one of the agents who sold the Lincoln National policy to Dakota Mack. As an agent, she had always serviced that account. When he called, Mr. Malavolti told a Dakota Mack official that plaintiff had been fired, so he was now servicing that account. However, despite the call by Mr. Malavolti, plaintiff continued to service the Dakota Mack policy for Lincoln National as a broker at least through the time of trial.
 
 
 16
 George Thorson, another person to whom plaintiff had sold a Lincoln National insurance policy, was also contacted by a Lincoln National sales agent. The contact was made after plaintiff was terminated and was in response to Mr. Thorson's phone call to defendants' offices in which he requested that the beneficiary on his policy be changed. Mr. Thorson allowed the sales agent he talked with to rewrite the policy plaintiff had originally written. After the policy was rewritten, plaintiff lost whatever commissions and service rights she may have had because of Mr. Thorson's original insurance policy.
 
 
 17
 On these facts, the jury rendered a $50,000 verdict on the breach of employment contract claims for wrongful termination. The jury further rendered a verdict of $5,000 nominal damages and $132,500 punitive damages on the tortious interference with contract claim. The plaintiff also presented evidence that Jerry Thornton, plaintiff's Lincoln National supervisor, had made sexual advances toward her which she had rejected several months before she was terminated. Plaintiff's tort claim based on sexual harassment was rejected by the jury, and a verdict was entered for the defendant on that count.II.
 
 A.
 
 18
 The district court properly granted defendants' motion for judgment n.o.v. on the breach of contract claim. Judgment n.o.v. may be granted when, without weighing the credibility of the witnesses or substituting the court's judgment for that of the jury, there is no evidence of substance upon which reasonable persons could differ. Karlen v. Ray E. Friedman & Co. Commodities, 688 F.2d 1193, 1197 (8th Cir.1982); Tackett v. Kidder, 616 F.2d 1050, 1052-53 (8th Cir.1980).
 
 
 19
 We find that the evidence was insufficient to support plaintiff's claim that her employment contract was breached. Plaintiff's written employment agreement with the defendant companies provided that "[t]he Agent or the Company may terminate the Agent's appointment under this contract, with or without cause...." The "with or without cause" provision essentially makes the employment agreement an "at will" employment contract. The only limitation on termination in the contract was that the notice be in writing. Plaintiff did receive written notice of her termination.
 
 B.
 
 20
 Plaintiff presented evidence that the companies' employee handbook, Responsibilities to Clients and Company, provided that:
 
 
 21
 You should be aware that should the Company or your Agency Management become aware of any instances of apparent dishonesty, misrepresentation or other failure to fulfill the responsibilities of a life insurance agent, there will be an immediate investigation. If that investigation confirms any wrongdoing, penalties appropriate to the offense, including termination, will be imposed.
 
 
 22
 Plaintiff contends that that provision limits the companies' right to terminate her without a pre-termination investigation. This Court finds and concludes that the statement in the employee handbook that "there will be an immediate investigation" of any agent's improprieties does not limit the companies' power to terminate plaintiff in this instance. Plaintiff's agreement with defendants was an at-will employment agreement.
 
 
 23
 Plaintiff relies on Osterkamp v. Alkota Manufacturing, Inc., 332 N.W.2d 275, 277 (S.D.1983), as a basis for her wrongful discharge claim. However, Osterkamp presented a different question than that now before this Court. The issue in Osterkamp was whether plaintiff's discharge was wrongful because it was not done in accordance with the specific, detailed disciplinary procedures which the employer adopted in its employee handbook. Here, the question presented is whether the employee handbook transformed plaintiff's employment agreement from one that was "at will" to one that was "for cause." The employee handbook in Osterkamp v. Alkota Mfg., supra, explicitly stated that " '[Alkota] will not discharge nor give disciplinary layoff to any employee without just cause.' " (Emphasis added). Nothing in plaintiff's agreement with the Lincoln National companies is comparable. Even without an explicit "for cause only" provision, an employee handbook which sets forth specific procedures which the employer agrees it will follow prior to any employee's termination may create a "for cause only" agreement. See Osterkamp v. Alkota, supra, 332 N.W.2d at 277; Tombollo v. Dunn, 342 N.W.2d 23, 25-26 (S.D.1984). The statement that some kind of an investigation would be undertaken when the companies became "aware of any instances of apparent dishonesty," and that termination was one penalty which could be found "appropriate to the offense," is too general for one to infer that every termination was to be for cause only.
 
 
 24
 The South Dakota Supreme Court recently confirmed that extraneous provisions in an employee handbook which may be tangentially related to discharge of employees does not create a "for cause only" employment agreement. Hopes v. Black Hills Power and Light Co., 386 N.W.2d 490 (S.D. 1986). In Hopes, the employer had a performance appraisal procedure which the employer never used to evaluate Ms. Hopes. Ms. Hopes' claim for wrongful discharge was dismissed on a grant of summary judgment for the employer; the grant of summary judgment was affirmed by the South Dakota Supreme Court. The Supreme Court relied on the clear terms of the South Dakota statute: "An employment having no specified term may be terminated at the will of either party." S.D.C.L. 60-4-4. The company's self-imposed procedural requirements were found not to change its right to terminate at will. Here, as in Hopes, the mere existence of an employer's general procedures which may be somehow related to employee termination does not create an implied promise to discharge for good cause only.
 
 
 25
 This Court recognizes that an increasing number of courts are willing to include employee manuals as a component of the employment agreement, thus expanding the rights of employees to successfully prosecute wrongful discharge claims. See, e.g., Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn.1983); Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980); Barger v. General Electric Co., 599 F.Supp. 1154 (W.D.Va.1984) (applying Virginia law). Cf. Tombollo v. Dunn, supra, 342 N.W.2d at 25-26 (finding Osterkamp not applicable where no employee handbook or procedure for disciplining or terminating employees was brought into evidence). However, employee manuals which neither explicitly create a "for cause only" agreement, nor do so implicitly through specific procedures for disciplining and terminating employees will support a claim for wrongful discharge under South Dakota law. The district court therefore properly granted judgment n.o.v. on plaintiff's employment contract claims, Counts I--III of the complaint.
 
 III.
 
 26
 The district court improperly denied defendants' motion for judgment n.o.v. on Count V of the complaint, the tortious interference with business relationships claim. The Restatement (Second) of Torts, Sec. 766, provides:
 
 
 27
 One who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.
 
 
 28
 South Dakota seems to have adopted the Restatement (Second) as its statement of the tort of interference with contractual relations. See Johnson v. Schmitt, 309 N.W.2d 838 (S.D.1981).
 
 
 29
 Defendants urge that the Restatement (Second) and Johnson v. Schmitt, supra, require that a contract be found to exist between plaintiff and the insurance buyers Dakota Mack and Thorson before plaintiff can recover on her wrongful discharge claim. Plaintiff argues that a contract need not be found. Rather, in her view, the "existence of a valid business relationship" is sufficient to establish a claim for tortious interference.
 
 
 30
 Under the factual circumstances of the present case, this Court need not decide whether a contract must have existed between the plaintiff and the two insurance buyers for plaintiff's claim to lie. There was no tortious interference here as a matter of law because there was no business relationship--contractual or otherwise--which plaintiff had with the insureds which was independent of plaintiff's role as an agent for the defendant companies.
 
 
 31
 There is no dispute that until mid-November, 1982, plaintiff was an agent for the defendant companies. Her renewal commissions were her compensation for acting as an agent on behalf of the defendant companies. Plaintiff sold and serviced insurance contracts on behalf of the defendant companies. As their agent, plaintiff was obliged to act solely for the benefit of the defendant companies in all matters connected with her agency. S.D.C.L. Sec. 59-6-1; Restatement (Second) of Agency, Sec. 387. This duty as an agent was not limited to selling policies from which defendants could collect premiums, but apparently also included an obligation to service policies which she sold. Any commissions which she received while the policies remained in force represented her compensation as an agent. Commissions received under the one-for-one vesting agreement were, in fact, a bonus compensation for a job done satisfactorily.
 
 
 32
 After her termination as a sales agent in November, 1982, plaintiff became a broker for defendant companies. Despite the change in title from "agent" to "broker," plaintiff retained most of the powers and duties of an agent for defendant companies. See Hurney v. Locke, 308 N.W.2d 764 (S.D.1981). Plaintiff continued to sell and service defendant's insurance policies in almost the same way that she had when she was employed as a "sales agent."
 
 
 33
 Accordingly, plaintiff had no relationship with the buyers of defendants' insurance policies that was independent of her role as an agent acting on behalf of the defendant companies. An agent is not in a position to claim tortious interference by the principal where the principal is overseeing contracts made by the agent on the principal's behalf. The calls to Dakota Mack and Mr. Thorson, made by other agents of the defendants, were actions by the principal companies to service the existing insurance contracts between defendant companies and the insured parties.
 
 
 34
 There was no evidence presented that plaintiff had an exclusive right to service the insurance contracts. If she did have an exclusive right to service those insurance contracts, she only enjoyed that right pursuant to her agency agreement with defendant companies. In this instance, then, plaintiff may have a valid claim for breach of her agency agreement. However, no such breach of contract claim was presented to the district court.
 
 
 35
 Because we find that judgment n.o.v. should have been granted on Count V of the complaint, the tortious interference claim, we need not decide whether the jury's $5,000 damage award on that count constituted "nominal" damages, or whether the punitive damage award was proper.
 
 
 36
 Accordingly, the district court's grant of judgment n.o.v. on Counts I--III should be and is hereby affirmed. The district court's denial of judgment n.o.v. on Count V should be and is hereby reversed.
 
 
 37
 It is so ordered.
 
 
 38
 ARNOLD, Circuit Judge, dissenting.
 
 
 39
 I respectfully dissent from the Court's holding that no cause of action for breach of contract was made out in this case. It is apparently undisputed that the procedures specified in defendant's employee handbook were not followed. The handbook promised that an immediate investigation would be held if the company became aware of any apparent dishonesty, misrepresentation, or other failure to fulfill the responsibilities of a life insurance agent. Further, the handbook assured employees that penalties appropriate to the offense, including termination, would be imposed "[i]f that investigation confirms any wrongdoing" (emphasis mine). Part of the employment contract, therefore, was a promise by the employer that an employee accused of misconduct falling within any of the defined categories would not be terminated or otherwise punished unless an investigation confirmed that the employee was in fact guilty of the alleged wrongdoing.
 
 
 40
 Plaintiff's theory is not that the employee handbook means that "every termination was to be for cause only," ante at 355, but only that terminations for the enumerated causes had to be preceded by investigation and finding of wrongdoing. Here, plaintiff was terminated, or at least the jury could have so found, because her superior believed that she had taken out of the office some documents that belonged to the company. If this is not "dishonesty" within the meaning of the employee handbook, it certainly seems to be a "failure to fulfill the responsibilities of a life insurance agent," and, therefore, the procedures guaranteed by the employee handbook should have been afforded.
 
 
 41
 Hopes v. Black Hills Power & Light Co., 386 N.W.2d 490 (S.D.1986) (per curiam), on which the Court relies, is not in point, in my view. Hopes holds only that a company's failure to give an employee a promised semi-annual review of her performance does not convert employment at will into employment for a definite term. The Hopes court was at pains to make clear that "[t]he procedure [adopted by the employer in that case] does not contain any rules regarding the discharge of employees." At 490. This point is underscored by the statement later in the opinion that "[t]he performance appraisal procedure which Hope relies upon deals solely with work performance and employee development and has no termination provisions." Id. At 491. The present case, in which procedures respecting discharge were agreed to by the employer, and in which the procedures relied on by plaintiff did have termination provisions, is not governed by Hopes.
 
 
 42
 I am also in disagreement with the Court as to Count V, tortious interference with business relationships. I am not aware of any general principle of law that a principal may not be liable in tort for maliciously interfering with a relationship between one of its agents and a third person, provided that relationship concerns the principal's business. Here, plaintiff was no longer an employee, nor was she an agent, having been discharged in both capacities. She was a "broker," which is apparently a status carrying with it somewhat more independence than that of "agent." As a "broker," she had a right to continue to service certain insurance contracts, and to derive from that activity certain fees. There is no contention that she was not carrying out this responsibility properly, nor has the company offered any clear explanation of its intervention in Ms. Cutter's business. With respect to the Dakota Mack policy, no liability could be imposed in any event, because plaintiff clearly was not damaged. But with respect to the Thorson policy, there is some evidence of damage, because this policy is not still being serviced by plaintiff, and she is therefore losing the commission income that she had a right to expect.
 
 
 43
 The Court may be correct in holding, presumably under South Dakota law, that this conduct is simply not actionable, but the District Court, which presumably knows more about the law of South Dakota than we do, did not so hold, and this Court cites no authority in support of its holding.
 
 
 44
 I would not, however, be inclined to reinstate the verdict on Count V. A verdict for $5,000 is clearly not "nominal," and punitive damages of $132,500 seem clearly excessive. I would prefer to remand for a determination by the District Court of the largest amount of compensatory damages that a rational jury could have attributed to the Thorson incident, and then allow that court to add to the compensatory award some reasonable amount of punitive damages. A remittitur to the extent indicated could then be offered to plaintiff, with the option of going to trial again on Count V if she rejected it.
 
 
 45
 For these reasons, I respectfully dissent from this Court's decision to deny any recovery to the plaintiff.
 
 
 
 *
 The HONORABLE JOHN W. OLIVER, Senior United States District Judge for the Western District of Missouri, sitting by designation