OPINION
This appeal arises out of two orders of the Mahoning County Commons Pleas Court which resulted in appellate case numbers 97 CA 95 and 97 CA 104. For the following reasons, the trial court's order which granted summary judgment and resulted in case no. 97 CA 95 is reversed and this cause is remanded for further proceedings in accordance with this opinion. Additionally, the appeal in case no. 97 CA 104 is dismissed for lack of a final appealable order.
 I. STATEMENT OF FACTS
In 1983, Nicholas Masters sold his interest in Masters Tuxedo Rental to his partner, Andrew Krainock. Pursuant to the buy-sell agreement, Mr. Krainock agreed to maintain group hospitalization coverage on Mr. Masters until he was able to obtain his own coverage. Mr. Masters agreed to reimburse Mr. Krainock for the premiums. At that time, Masters Tuxedo had a Blue Cross/Blue Shield group policy. Over the years, Mr. Krainock obtained insurance for the Masters Tuxedo group from various insurance companies. In 1989, Masters Tuxedo group was covered by Central Benefits Insurance, but in October a letter arrived which stated that their coverage was being canceled. As such, Masters Tuxedo employee Mark Jacobson solicited bids for new group coverage.
One of the bids was submitted by independent insurance agent Marvin Watt. Because of health problems in the group at Masters Tuxedo, Mr. Watt sought assistance from his colleague Clifford Ulewicz to locate an appropriate plan. With the help of these two agents, Masters Tuxedo enrolled in a Multiple Employers Welfare Agreement (MEWA) managed by Atlantic Administrators who was not a fully insured third party administrator. The plan went into effect on December 1, 1989 and was for fifteen full-time employees. The one page Adoption Agreement stated that only active full-time employees were eligible for coverage.
On December 6, Mr. Jacobson forwarded the Central Benefits letter to Mr. Masters. Mr. Jacobson advised Mr. Masters that he may want to start looking for his own insurance because their agent told them that Mr. Masters would not be accepted as part of the Masters Tuxedo group on a retiree basis. Mr. Masters denies ever receiving such a communication from Mr. Jacobson. Later that month, Mr. Jacobson submitted Mr. Masters' enrollment form to Mr. Watt claiming that it was misfiled. As is apparent from insurance documents, Mr. Masters was then added to the original list of enrollees from the Masters Tuxedo group.
Mr. Masters suffered a heart attack in June 1990. Because his medical bills were accumulating, he called Atlantic who told him to resubmit his claims. In December 1990, Atlantic filed for bankruptcy. Because of past due medical bills, Western Reserve Care System sued Mr. Masters for collection on his account in 1992. Mr. Masters consented to judgment against him in the amount of $28,030.50. At the same time, on October 12, 1993, Mr. Masters filed a third party complaint against the following parties on the following grounds: Atlantic for breach of contract; David Balzer and John Dunham, who owned Atlantic, for breach of fiduciary duty; Masters Tuxedo and Mr. Krainock for breach of contract and negligence; and Mr. Watt and his insurance agency for ordinary negligence and for statutory negligence or negligence per se. As for the statutory negligence claim, Mr. Masters alleged that Mr. Watt violated R.C. 3905.23 which prohibits the sale of policies from an unlicensed carrier. In 1994, Mr. Ulewicz and his insurance agency were added as defendants on the same grounds as Mr. Watt.
Mr. Watt filed a motion for summary judgment on June 30, 1995, alleging that he owed no duty to non-employees of Masters Tuxedo such as Mr. Masters. He cited the Adoption Agreement which stated that only currently active employees are eligible for the insurance coverage. Mr. Masters responded to this motion by alleging that Mr. Watt knew he was retired so he was estopped from asserting his non-employee status.
Then, Mr. Krainock and Masters Tuxedo filed for summary judgment on the basis that they could not maintain existing coverage for Mr. Masters as required by the buy-sell agreement because the insurance plan that they were on in 1983 was terminated. Mr. Masters responded to this motion by stating that "maintaining existing hospitalization insurance" did not mean the exact policy had to be maintained but meant that coverage must be maintained that is comparable to that which existed in 1983.
In November 1995, Mr. Masters filed motions for summary judgment against Mr. Watt, Mr. Ulewicz, their respective insurance agencies, Mr. Krainock, and Masters Tuxedo. Thereafter, Mr. Ulewicz also filed for summary judgment. Although there is no record of it, the parties agree that a hearing on all of the summary judgment motions was held on February 6, 1996 in front of Judge Gerchak. In July, Mr. Masters submitted a supplemental memorandum which contained the affidavit of an insurance expert. Mr. Ulewicz responded with his own affidavit and that of an insurance expert.
On December 2, 1996, Judge Gerchak granted summary judgment in favor of Mr. Krainock and Masters Tuxedo. Because the court did not serve notice of this judgment upon the parties, Mr. Masters did not appeal. Nonetheless, after receiving a copy of the judgment from opposing counsel, Mr. Masters filed a Civ.R. 60 (B) motion to vacate the summary judgment. By this time, Judge Gerchak had retired.
Thereafter, Judge Cacioppo, who filled in after Judge Gerchak retired, granted summary judgment in favor of Mr. Watt and Mr. Ulewicz and simultaneously denied Mr. Masters' motion for summary judgment against these two parties. This order was time-stamped on January 16, 1997, but was not served upon the parties until Judge Durkin so ordered on April 4, 1997. Mr. Masters filed a timely appeal which produced case number 97 CA 95.
On April 9, 1997, Judge Durkin granted Mr. Masters' Civ.R. 60 (B) motion by vacating Judge Gerchak's December 2 order of summary judgment. Mr. Krainock and Masters Tuxedo appealed the vacation of summary judgment, resulting in case number 97 CA 104.
 II. MR. MASTERS' FIRST ASSIGNMENT OF ERROR IN 97 CA 95
Mr. Masters sets forth two assignments of error, the first of which reads:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THIRD PARTY PLAINTIFF-APPELLANT GRANTING SUMMARY JUDGMENT ON BEHALF OF MARVIN R. WATT, ETC., AND CLIFFORD ULEWICZ, ETC., DESPITE APPELLANT'S INSURANCE EXPERT'S AFFIDAVIT WHICH DEMONSTRATED GENUINE ISSUES OF MATERIAL FACT EXISTED UPON WHICH REASONABLE MINDS COULD COME TO DIFFERING CONCLUSIONS."
Mr. Masters alleged statutory negligence and ordinary negligence based upon the conduct of Mr. Watt and Mr. Ulewicz. The statutory negligence claim alleged a violation of R.C.3905.23 which prohibits the sale of health insurance on behalf of a company that is unauthorized to transact business in Ohio. Mr. Watt argues that the court need not delve into the elements of this statute because the violation of insurance laws such as R.C.3905.23 does not create a private civil cause of action.
 A. STATUTORY NEGLIGENCE
The Supreme Court of Ohio has held that where an agency is charged with enforcement of certain laws, these laws do not confer upon an individual the right to bring a private civil action absent a "clear implication" that such a remedy was intended by the legislature. Fawcett v. G.C. Murphy Co. (1976),46 Ohio St.2d 245, 248-249 (refusing to imply a private cause of action for violation of an age discrimination statute where the Department of Industrial Relations was explicitly empowered to enforce said statute).[1] "It is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another." Nielsen v. Ford Motor Co. (1996),113 Ohio App.3d 495, 500. Pursuant to R.C. 3901.011 the superintendent of the Ohio Department of Insurance has the obligation to see that all insurance laws are executed and enforced. Upon gathering sufficient evidence of a violation of insurance laws, the superintendent shall cause the suspect to be arrested and charged and shall furnish the proper prosecuting attorney with the evidence obtained.
According to the pertinent portion of the underlying statute in the case at bar (R.C. 3905.23) the superintendent shall revoke the license of any agent who sells health insurance on behalf of a company that is unauthorized to do business in Ohio. Furthermore, whoever is found to have violated R.C. 3905.23 shall be fined between $25.00 and $500.00 and/or sentenced to six months of incarceration. See R.C. 3905.99. Because the superintendent of insurance and prosecuting attorneys have the express power to enforce R.C. 3905.23, we fail to see a "clear implication" that this statute creates a private remedy. The Ninth Appellate District has similarly declined to extrapolate private remedies out of various insurance laws in Strack v.Westfield Cos. (1986), 33 Ohio App.3d 336; Goodyear Tire RubberCo. v. Aetna Casualty and Surety Co. (July 12, 1995), Summit App. No. 16993, unreported, as has the First Appellate District in Elwert v.Pilot Life Ins. Co. (1991). 77 Ohio App.3d 529, using a test adapted from Cort v. Ash (1975), 422 U.S. 66. Accordingly, when Mr. Watt and Mr. Ulewicz filed answers which stated that Mr. Masters failed to state a claim upon which relief could be granted, they were correct as to Mr. Masters' statutory negligence claim which sought to impose negligence per se.
However, the lack of a private cause of action for a certain statutory violation does not preclude a plaintiff from bringing "a separate claim that is based upon the same conduct, but is recognized at common-law." Goodyear, supra at 6, citing LaCoursev. Fleitz (1986), 28 Ohio St.3d 209, 212. Thus, although Mr. Masters is barred from maintaining his statutory negligence cause of action, he may be permitted to maintain his cause of action which alleges ordinary negligence by the insurance agents in selecting an appropriate hospitalization arrangement. In his complaint, Mr. Masters stated that the agents were negligent by breaching their duty to exercise care and professionalism.
 B. ORDINARY NEGLIGENCE
On appeal, Mr. Masters argues that summary judgment should not have been granted for Mr. Watt and Mr. Ulewicz because there existed conflicting affidavits on the issue of the propriety of selling MEWAs that are not fully insured. There appears to be a difference of opinion about whether an insurance agent breaches a duty to his client by selling a MEWA in Ohio such as the one offered by Atlantic in 1989. Nevertheless, Mr. Watt and Mr. Ulewicz argue that the issue of the legality of the sale or their negligence with regards to the sale was not relevant because before there can be a breach of duty, there must first be a duty.
To prevail on his negligence claim, Mr. Masters must establish the existence of a duty owed to him by the defendants. Gelbman v.Second Natl. Bank of Warren (1984), 9 Ohio St.3d 77, 78. See, also, Wellman v. E. Ohio Gas Co. (1953), 160 Ohio St. 103,108-109. In seeking summary judgment, Mr. Watt and Mr. Ulewicz claimed that they owed no duty to Mr. Masters and met their initial burden by demonstrating that Mr. Masters was retired and thus ineligible for coverage under the MEWA. See Dresher v. Burt
(1996), 75 Ohio St.3d 280 (outlining the reciprocal burdens). To overcome summary judgment, Mr. Masters then had to demonstrate that there was a genuine issue of material fact with regards to whether the agents owed a duty to him. See Id. A duty may be established by common law, legislative enactment, or by the specific facts and circumstances in a certain case. Chambers v.St. Mary's School (1998), 82 Ohio St.3d 563, 565, citingEisenmuth v. Moneyhon (1954), 161 Ohio St. 367, paragraph one of the syllabus.
Mr. Masters contends that the deposition testimony of Masters Tuxedo employee Mark Jacobson demonstrates a genuine issue of material fact with regards to whether Mr. Watt knew that Mr. Masters was retired. Mr. Jacobson stated that he believed that he would have informed Mr. Watt about Mr. Masters' retiree status. (Depo. at 27-28). Under the particular facts and circumstances in the case sub judice, such knowledge by Mr. Watt would create a duty towards Mr. Masters. See Merrill v. William F. Ward Ins.
(1993), 87 Ohio App.3d 583, 591.
In support of Mr. Masters' argument that there is a genuine issue for trial dealing with whether Mr. Watt had notice that Mr. Masters was retired, we point the parties to the December 6, 1989 letter that Mr. Jacobson allegedly sent to Mr. Masters and which stated in part:
 "Enclosed you will find a copy of Central Benefits' letter to Masters regarding nonrenewal of our health insurance coverage. Two weeks following the letter from Central Benefits we received bids from four companies offering similar coverage. Upon chosing [sic] an IDS company bid and enrolling in their plan before the Thanksgiving holiday we asked for coverage to begin December 1, 1989.
 Tuesday afternoon I was informed through our agent that his company would not offer coverage to you as a member of our group on a retiree basis. They base this on underwriting requirements for groups of our size. Because the time is short we may not find another carrier who may be willing to accept our group with a December 1, 1989 start date.
 You may want to begin a search for health coverage for yourself as soon as possible in order that major expenses may be insured."
This letter implies that Mr. Watt knew that Mr. Masters was retired and informed Masters Tuxedo that he was not eligible for coverage under Atlantic's plan. It can be inferred that the agent referred to in the letter is Mr. Watt for many reasons: the letter was dated December 6 which was a Tuesday; the letter says that it was Tuesday when Masters Tuxedo was informed about Mr. Masters ineligibility; the letter says that Masters Tuxedo enrolled in a plan before the Thanksgiving holiday; the application for insurance from Atlantic was signed by the office manager of Masters Tuxedo on November 29, 1989 and given to Mr. Watt that day. The next day, the office manager signed a one page Adoption Agreement which contained a clause that said:
 "The undersigned further certifies that he understands and agrees to comply with the following:
* * *
 (4) That regardless of group size, an Employee who is not actively at work on the effective date of this adoption agreement other than because of occupational injury or sickness for which he is eligible for Worker's Compensation or Occupational Disease Law benefits shall not become eligible for coverage until he resumes active service;"
Mr. Masters was not one of the original enrollees. It was only when Masters Tuxedo sent a letter to Mr. Watt in late December, which stated that the enrollment form of Mr. Masters had been "misfiled," that Mr. Masters was added onto the list of enrollees. Mr. Watt's deposition testimony states that he did not know that Mr. Masters was retired. However, from the above analysis, it is apparent that there is a genuine issue of fact as to whether Mr. Watt had a duty toward Mr. Masters. As set forth above, such duty would arise if Mr. Watt procured coverage specifically for Mr. Masters after having notice that Mr. Masters' was not an active full-time employee.
Mr. Masters argues that Mr. Watt waived his chance to argue that he has no duty because he did not raise this as an "affirmative defense" in his answer or an amendment thereto as required by Civ.R. 8 (C) and 15. However, the alleged lack of duty is not an affirmative defense; it is the negation of an element of Mr. Masters' cause of action. Thus, Mr. Watt did not waive his ability to contest that he has a duty towards Mr. Masters.
Moreover, the ineligibility of Mr. Masters under the MEWA also affects the element of causation. If Atlantic had not declared bankruptcy, Mr. Masters' medical bills still would not have been paid since he was not an active full-time employee. Mr. Watt did contest causation in his answer. Nonetheless, analogous to the above analysis, if Mr. Watt is found to have placed Mr. Masters on the MEWA enrollee list knowing of his retiree status, then the causation element with regards to Mr. Masters lack of insurance and unpaid medical bills can be traced to Mr. Watt, as well as to Mr. Krainock and Masters Tuxedo. For all of the above reasons, the summary judgment entered in favor of Mr. Watt must be reversed and the cause remanded for further proceedings.
Mr. Ulewicz points out that he had no duty towards Mr. Masters because there is no argument that he knew of Mr. Masters' ineligibility for coverage. However, an alternative reason for imposing a duty on the agents is the fact that Mr. Masters paid premiums of $204.00 per month to Atlantic and his name was listed in Atlantic's billing records as being an insured. Therefore, if Atlantic had not gone bankrupt, Mr. Masters would have been ineligible for coverage due to his retiree status. However, Atlantic would have been obligated to reimburse Mr. Masters' premiums to the extent that they were not expended on any prior medical claims made by Mr. Masters. See James R. Soda, Inc. v.United Liberty Life Ins. Co. (1986), 24 Ohio St.3d 188, 189
(stating that premiums are only non-refundable if the insurance carrier incurred risk). If it is determined that Mr. Ulewicz was negligent in selling the Atlantic plan, then he may be liable for all or part of the amount of the premiums paid to Atlantic by Mr. Masters. He is not liable for Mr. Masters' medical bills because his duty to Mr. Masters only runs as deep as the duty that Atlantic would have towards Mr. Masters as an ineligible payor who is entitled to be reimbursed for the amount he paid in premiums. Thus, the grant of summary judgment for Mr. Ulewicz is reversed and the cause is remanded for a determination of whether the sale of Atlantic's MEWA was negligent.[2]
 III. MR. MASTERS' SECOND ASSIGNMENT OF ERROR IN 97 CA 95
After arguing that summary judgment should not have been granted for Mr. Watt and Mr. Ulewicz, Mr. Masters argues, in the following assignment of error, that summary judgment should have been granted in his favor:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THIRD PARTY PLAINTIFF-APPELLANT IN OVERRULING THE MOTION FOR SUMMARY JUDGMENT BY MASTERS DESPITE THEIR UNCONTRADICTED INSURANCE EXPERT'S AFFIDAVIT REGARDING THE ISSUE OF NEGLIGENCE IN THAT NO GENUINE ISSUES OF MATERIAL FACT EXISTED UPON WHICH REASONABLE MINDS COULD COME TO DIFFERING CONCLUSIONS."
Under this assignment, Mr. Masters contends that he was entitled to summary judgment against Mr. Watt and Mr. Ulewicz. The within denial of summary judgment motion is a final appealable order since it was rendered simultaneously with the summary judgment for the agents which ended the lawsuit. Mr. Masters argues that the trial court should have granted summary judgment in his favor because the affidavit of his insurance expert, Neil Rector, was uncontradicted on the specific issue of negligence. Mr. Rector suggested that the agents should have contacted the Ohio Department of Insurance before selling Atlantic's MEWA.
Contradicting affidavits were submitted on the topic of the propriety of selling MEWAs. Mr. Ulewicz responded to Mr. Rector's affidavit with the affidavit of his own insurance expert, Lauren Call Strussion. Ms. Strussion and Mr. Rector have different opinions on whether a 1992 bulletin released by the Department of Insurance was a reiteration of law that all agents should have been aware of or the issuance of new department policies with regards to MEWAs. Ms. Strussion states that the bulletin was issued as a result of "great confusion" on the status of MEWAs in Ohio. Mr. Ulewicz submitted an affidavit in which he stated that he spoke with the Department of Insurance about MEWAs before the 1992 bulletin was issued but was never advised to discontinue their sale.
In construing these affidavits, we do not agree that Mr. Rector's affidavit, which was submitted months after the summary judgment hearing, was uncontradicted on the issue of negligence, or more specifically on the breach element of negligence. Credibility of the affiants is not an issue properly disposed of by a summary judgment order. Aglinsky v. Cleveland BuildersSupply Co. (1990), 68 Ohio App.3d 810, citing, Sartor v. ArkansasNatural Gas Corp. (1944), 321 U.S. 620. Hence, the nonmovants met their reciprocal burden of refuting the evidence proffered by the movant. See Dresher, supra. Summary judgment should be entered cautiously; doubt must be resolved and the evidence construed for the nonmovant. Murphy v. City of Reynoldsburg (1992), 65 Ohio St.3d 356,359. We cannot say that reasonable minds could only come to one conclusion concerning the existence of a breach of duty in selling the MEWA offered by Atlantic. See Civ.R. 56 (C). Thus, the trial court's denial of Mr. Masters' summary judgment motion is affirmed, and this assignment of error is overruled.
 IV. MR. KRAINOCK'S AND MASTERS TUXEDO'S ASSIGNMENTS OF ERROR IN 97 CA 104
Mr. Krainock and Masters Tuxedo set forth the following two assignments of error:
 "BY PURCHASING THE COVERAGE FROM ATLANTIC AND NOT BEING ABLE TO RENEW WITH COMMUNITY MUTUAL BLUE CROSS/BLUE SHIELD, KRAINOCK, ET AL, DID NOT BREACH HIS CONTRACT WITH MASTERS BY NOT `MAINTAINING EXISTING HOSPITALIZATION INSURANCE ON THE SELLER'."
 "THE COURT ERRED WHEN, ON APRIL 9, 1997, IT VACATED KRAINOCK'S, ET AL, MOTION FOR SUMMARY JUDGMENT RENDERED ON DECEMBER 2, 1996, WITHOUT NOTICE TO KRAINOCK'S, ET AL, OR AN EVIDENTIARY HEARING."
Upon review of this matter, it is the determination of this court that we must dismiss the appeal in case number 97 CA 104 due to the lack of a final appealable order. This court refused to hear appeals involving a trial court's order vacating a prior order of summary judgment in Rozzi v. CSX Transp. (Dec. 17, 1998), Mahoning App. No. 96 C.A. 8, unreported, 2, and SecondNatl. Bank of Warren v. Liguore (Aug. 26, 1998), Mahoning App. No. 96 C.A. 243, unreported, 4. We reasoned that since the denial of a summary judgment motion is not a final appealable order, neither is the vacation of a previous grant of summary judgment.Id. In both instances, the trial court reaches the same decision and allows the case to proceed on the merits. Id.
For the foregoing reasons, the trial court's order which granted summary judgment and resulted in case no. 97 CA 95 is reversed and this cause is remanded for further proceedings according to law and consistent with this court's opinion. Additionally, the appeal in case no. 97 CA 104 is dismissed for lack of a final appealable order.
Cox, P.J., Donofrio, J., concurs.
APPROVED:
 ___________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Later, the legislature amended R.C. 4101.17, the statute at issue in Fawcett, to allow a private civil cause of action.
[2] As for determining whether the agents were negligent, it has been stated that an agent must exercise such reasonable skill and diligence that an ordinary person would expect from an agent in selecting the insurer or third party administrator and in ascertaining that such entity is of good credit and standing. See 57 Ohio Jurisprudence 3d (1980) 240, Insurance, Section 191.