**LITTON SYSTEMS, INC., d/b/a Ingalls Shipbuilding Division, Plaintiff,**

**v.**

**FRIGITEMP CORPORATION and Lawson F. Bernstein, Trustee in Bankruptcy of Frigitemp Corp., Frigitemp Corporation, Lawson F. Bernstein, Trustee in Bankruptcy of Frigitemp Corporation, Gerald Lee, and Marvyn Silver, Defendants.**

**Civ. A. No. S77–0372(B).**

United States District Court, S.D. Mississippi, S.D.

July 3, 1985.

Karl Wiesenberg, Pascagoula, Miss., Thomas L. Patten, Latham, Watkins & Hills, Washington, D.C., William J. Powers, Pascagoula, Miss., D. Michael Fitzhugh, McKenna, Conner & Cuneo, Washington, D.C., L.E. Allison, Jr., Edmund L. Brunini,

Brunini, Grantham, Grower & Hewes, Jackson, Miss., for plaintiff.

William R. Grimes, Garrity, Connolly, Lewis, Lowry & Grimes, New York City, George S. Shaddock, Pascagoula, Miss., J. Leray McNamara, Jackson, Miss., Richard F. Scruggs, Pascagoula, Miss., W. Scott Welch, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., Norman M. Monhait, Irving Morris, Morris & Rosenthal, Wilmington, Del., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court on the Motion of the Plaintiff, Litton Systems, Inc., d/b/a Ingalls Shipbuilding Division ("Litton"), for partial summary judgment on its entitlement to an accounting and for an Order appointing a master. The Court, having considered the briefs, affidavits and materials submitted in support of, and in opposition to the Motion, is of the opinion, for the reasons set out hereinafter, that the Motion should be denied.

## FACTS

In May, 1969, Litton entered into Contract No. N00024–69–C–0283 for the construction of certain Landing Helicopter Assault (LHA) vessels to be delivered to the United States Navy. In 1970, Litton entered into Contract No. N00024–70–C–0275 for the construction of 30 destroyer (DD) vessels to be delivered to the United States Navy. Litton subcontracted to Frigitemp a substantial portion of essential construction work on the LHA and DD vessels, three of which subcontracts are at issue in this proceeding.

On or about June 20, 1972, Litton placed Purchase Order P.O. No. 21–01–A00505–01 with Frigitemp for the purchase and installation of hull insulation on an LHA at a fixed price of $5,100,000. On or about April 16, 1973, Litton placed P.O. No. 69–01514–011 with Frigitemp for LHA joiner work at a fixed price of $10,985,250. On or about April 16, 1973, Litton placed P.O. No. 70–01501–001 with Frigitemp for DD joiner work and hull insulation at a fixed price of $52,800,000. Litton alleges that by letters and in meetings during 1976, Frigitemp falsely and fraudulently asserted that it had obtained and stored in its Pascagoula warehouses substantially all of the materials for the subcontracts and that it had incurred costs substantially in excess of the face amount of the three subcontracts. In late 1976 and early 1977 Frigitemp asserted that it could not continue its work under the subcontracts due to its precarious financial condition (allegedly caused by Litton's defaults and breaches of the three subcontracts). Litton agreed to pay Frigitemp its allowable actual costs incurred on the three subcontracts from and after November 15, 1976. Pursuant to this agreement, Litton alleges that it has overpaid Frigitemp by approximately 50 million dollars.

## PROCEDURAL HISTORY

On or about October 19, 1977, Frigitemp threatened to stop work on the subject subcontracts. On October 27, 1977, Litton filed this action. On October 28, 1977, a Consent Order was entered obligating Frigitemp to continue performance on the subcontracts and reserving to the parties all of their rights and remedies. On May 28, 1979, Litton terminated the Frigitemp subcontracts for default due in part to insolvency pursuant to paragraph 7b(3) of the LHA terms and conditions and paragraph 7b(3) of the DD standard terms and conditions as contained in the subcontracts. On May 29, 1979, the United States District Court for the Southern District of New York entered an Order adjudicating Frigitemp a bankrupt pursuant to Sections 1(2), (12) and (18) of the Bankruptcy Act. On or about September 12, 1979, Litton filed a Complaint to Vacate Stay and Extend Time for Filing Proof of Claim. The United States Bankruptcy Judge for the United States District Court, Southern District of New York entered an Order on January 2, 1980, denying Litton's application for an extension of time to file proof of claim.

The last day for filing a proof of claim in the Frigitemp Bankruptcy proceeding was February 4, 1980. Litton did not file a proof of claim in this proceeding. The bankruptcy stay which had been entered on May 29, 1979, was lifted by Order of the Bankruptcy Court on May 15, 1980. Litton filed its first Amended Complaint on which this proceeding is based, on May 6, 1981.

## DISCUSSION

In its Motion for Partial Summary Judgment on its entitlement to an accounting and for Appointment of a Master, Litton seeks two separate, although related things. These will be discussed separately hereinafter.

### A. *Request for Accounting.*

In Count II of its First Amended Complaint, Litton seeks an accounting with respect to: 1) the money it paid Frigitemp under the subcontracts, 2) all of Frigitemp's costs incurred pursuant to its performance under the subcontracts, 3) all amounts which Frigitemp's books, records of account, invoices and documents in the possession of Frigitemp or its trustee in bankruptcy reflect as having been paid by Litton to Frigitemp during Frigitemp's performance on the subcontracts, and 4) all materials acquired by Frigitemp for performance of the subcontracts. Litton asserts that it is entitled to an accounting as a matter of contract right, and as a matter of equity.

### 1. *Contractual entitlement to accounting.*

■ Each of the subcontracts at issue contains the following clause in the Terms and Conditions:

RIGHT TO INSPECT—[Frigitemp] agrees that [Litton] and/or government shall have the privilege of inspecting, checking and verifying the correctness and physical progress of the work and material described in paragraph 3(a), and the cost and value of such work and materials at any time, and [Frigitemp] agrees to make available to [Litton] and/or Government at [Frigitemp's] office and plants at all reasonable times, such of its records and information as are necessary for said inspection, checking and verification.

Furthermore, Litton asserts that it is entitled to an accounting pursuant to a series of agreements entered into between Litton and Frigitemp beginning in early January, 1977. The first such agreement provides in pertinent part:

Frigitemp agrees to repay to Ingalls any amounts which Ingalls so pays to Frigitemp [under the agreement to pay allowable incurred costs] in the event that Frigitemp's claims do not legally or contractually support the amounts so paid.

. . . . .

Frigitemp's books, records and accounting records will be subject to complete inspection and audit by Ingalls and the Government for the purpose of verifying the validity of Frigitemp's claims and allowability of Frigitemp's costs.

The second in this series of agreements, dated March 30, 1977, provided:

Ingalls agrees to continue to pay Frigitemp all of Frigitemp's allowable costs incurred, in performance of these purchase orders ... during the period April 1, 1977, through December 31, 1977.

. . . . .

Frigitemp's books, records and accounting records will be subject to complete inspection and audit by Ingalls and the U.S. Government for the purposes of verifying Frigitemp's claims and the allowability of Frigitemp's costs incurred under ASPR Section 15 Part 2.

The third in this series of agreements, dated March 16, 1978, stated:

3. Ingalls shall pay to Frigitemp all of Frigitemp's allowable costs incurred in performance of the Purchase Orders ... for the period January 1, 1978 through December 31, 1978.

. . . . .

4. Frigitemp's books, records and accounting records will be subject to com-

plete inspection and audit by Ingalls and the United States for the purpose of verifying the validity of Frigitemp's claims and the allowability of its costs....

Finally, Litton argues that Frigitemp owes a duty to the Navy to maintain auditable records pursuant to the following clause found in the Terms and Conditions of each subcontract:

RECORDS—[Frigitemp] shall maintain, until the expiration of the three (3) years following the date of final payment under this Order, records showing the cost of performing this Order and any termination of work thereunder. Such records shall be available for inspection by the Government at all reasonable times, at the office of [Frigitemp]. [Frigitemp's] method of accounting shall be subject to approval of the Government, but no material change shall be made therein if it conforms to good accounting practice.

It is clear from examination of the clauses above referenced that Frigitemp is not contractually obligated to provide either Litton or the Navy with an accounting. While the clauses clearly obligate Frigitemp to open its books and accounting records to Litton and the Navy for inspection and audit, the clauses do not place the burden of performing this audit, nor do they place the responsibility of an accounting, on Frigitemp. Litton has cited no cases, and the Court has been unable to uncover any in its own search, construing language similar to that set out in the clauses above referenced as requiring an obligation to account to the other contracting party. The Court is therefore of the opinion that Frigitemp is not contractually obligated to provide an accounting in this proceeding.

2. *The equitable remedy of accounting.*

■ Although stated in various ways, Litton's arguments of entitlement to an equitable accounting may be expressed as follows: 1) the complexity and number of documents involved mandates an accounting; 2) Litton owes a duty to the Navy to

seek and obtain an accounting; 3) Litton's lack of success in prior audits and the unreliability of the audits performed by Arthur Anderson & Co. make an accounting necessary; 4) allegations of fraud against Defendant Silver and other Frigitemp corporate officers necessitate an accounting; 5) the records are in the sole possession of the trustee; and 6) the positions of Litton and Frigitemp are radically different and diametrically opposed.

In *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the Plaintiff sought damages and an injunction preventing the defendant from infringing upon the plaintiff's exclusive use of the trademark "Dairy Queen." The plaintiff's complaint was cast in terms of an "accounting" and the plaintiff resisted the defendant's demand for a jury trial. The Supreme Court held that where both legal and equitable issues are presented in a single case, any legal issues must be submitted to a jury first. The Court, in discussing the equitable right to an accounting, noted:

The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres,* the absence of an adequate remedy at law.... The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into ... business records.

*Id.* at 478–79, 82 S.Ct. at 900–01. In *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) the Supreme Court held that the fact that an antitrust action was brought as a declaratory judgment could not deprive a party of its right to a jury trial. Although the Court was speaking specifically about the basis for injunctive relief, the following statement pertains to equitable relief in general:

Inadequacy of remedy and irreparable harm are practical terms, however. As such their existence today must be determined, not by precedents decided under discarded procedures, but in the light of

the remedies now made available by the Declaratory Judgment Act and the Federal Rules.

*Id.* at 507, 79 S.Ct. at 955 (footnote omitted).

In *Bynum v. Baggett Transportation Co.*, 228 F.2d 566 (5th Cir.1956) an action for accounting brought by owner-lessors of motor trucks against an interstate truck carrier, the Fifth Circuit held that the action was "a proper action for accounting in both substance and procedure, involving hundreds of distinct shipments of countless commodities to and from numerous points, presenting thus the inevitable esoteric mysteries of application and interpretation of carrier tariffs...." *Id.* at 569. Litton cites several older Mississippi decisions in accord with the Fifth Circuit's ruling in *Bynum.* These older decisions do not take into account the far-ranging discovery features of the modern day Federal Rules of Civil Procedure. In *Bradshaw v. Thompson,* 454 F.2d 75 (6th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972) the Sixth Circuit held that a plaintiff seeking an accounting as to the proceeds received from the sale of 60 horses was not entitled to the "extraordinary" remedy of an accounting, since discovery would provide the plaintiff with the information sought. After discussing the holdings in *Beacon Theatres* and *Dairy Queen* that equitable relief will not be granted where the legal remedy is adequate, the court noted:

> The availability of declaratory judgments and the liberal discovery procedures of the Federal Rules operate to make the legal remedies more "adequate" than before. This case is an example of that fact.
>
> The appellant obtained by discovery all information to which he could have been entitled in an accounting. Information concerning the disposition of each horse, including purchase price, name of pur-

chaser and the consideration received was obtained and was set forth in the pretrial order....

> An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another. *It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate.* We find no basis for disturbing the District Court's conclusion that the procedures of the Federal Rules for causes at law were fully adequate to provide the relief sought by the appellant.

*Id.* at 79 (emphasis added). Nor is the alleged fraud of Frigitemp's officers and the alleged fraud or unreliability of the Arthur Anderson audits sufficient reason to order an accounting, since the remedy at law in this case is adequate. *See, e.g., Equitable Life Assurance Society v. Brown,* 213 U.S. 25, 49, 51, 29 S.Ct. 404, 412, 413, 53 L.Ed. 682 (1909); *United States v. Bitter Root Company,* 200 U.S. 451, 26 S.Ct. 318, 50 L.Ed. 550 (1906); *Buzard v. Houston,* 119 U.S. 347, 7 S.Ct. 249, 30 L.Ed. 451 (1886).

The Court is of the opinion that there is no contractual or equitable basis for an accounting in this action. Litton has had access to the accounting records of Frigitemp and has in fact conducted several audits of these records during the course of the contracts. Furthermore, Litton has access to all of the discovery means available to litigants under the liberal Federal Rules of Civil Procedure pertaining to discovery.

Since a court-ordered accounting is merely evidence of the mutual debts and obligations of the parties which a jury is free to accept or reject, the Court is not swayed by Frigitemp's arguments that an accounting would deprive them of their Seventh Amendment right to a jury trial.[1] Even

---

1. Frigitemp argues that an accounting would deprive them of their right to a jury trial in this case. See *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon*

*Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.,* 294 F.2d 486 (5th Cir.1961). These cases merely stand for the

though an accounting could be granted in this case without violating Frigitemp's Seventh Amendment right to a jury trial, the Court has concluded that this "extraordinary" remedy is not justified in this case. The matter boils down to a question of who should pay for the compilation of data and evidence necessary to present the case to a jury. The Court sees no compelling reason to shift this burden from each litigant under present discovery procedures and place it solely on Frigitemp. Although the prevailing party may be entitled to an allocation of costs against the losing party which would entail some of the discovery expenses, it is premature at this point to allocate this burden to Frigitemp absent a showing that Litton's entitlement to an accounting cannot genuinely be disputed.[2]

**B.** *Request for Appointment of Master.*

■ Litton has moved for the appointment of a master pursuant to F.R.Civ.P. 53. Since "[a] reference to a master shall be the exception and not the rule" F.R. Civ.P. 53(b), the propriety of appointing a master in this proceeding must be clearly shown. Litton argues that the complexity of the issues in this case make it appropriate for the appointment of a master. As the United States Supreme Court noted in *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, *reh'g denied*, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957), however, "on the contrary, [complexity] is an impelling reason for trial before a regular, experienced judge rather than before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work." *Id.* 352 U.S. at 259, 77 S.Ct. at 315.

While noting that reference to a master lies within the sound discretion of the trial court, the Supreme Court overturned reference to a master in *La Buy*. Likewise, in *Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir.), *cert. denied*, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972), the court noted:

> The appellant further contends that the Court abused its discretion in declining to appoint a master to assist the jury. The decision to appoint a master whose function is to aid the judge in the performance of specific judicial duties, is within the discretion of the District Court. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256, 77 S.Ct. 309 [313], 1 L.Ed.2d 290 (1957). The fact that "the case involves complex issues of fact and law is no justification for reference to a Master, but rather is an impelling reason for trial before an experienced judge." *Bartlett-Collins Co. v. Surinam Nav. Co.*, 381 F.2d 546, 551 (10th Cir.1967); see also *In Re Watkins*, 271 F.2d 771 (5th Cir.1959). The overall mandate of Rule 53(b) is that reference to a master is to be the exception and not the rule. Actions for fraud are particularly inappropriate for reference to a master "save in extraordinary or exceptional cases." *Irving-Austin Bldg. Corp. v. Cunningham*, 100 F.2d 574 (7th Cir.1938). We find no abuse of discretion in the Court's refusing to appoint a master to assist the jury.

*Id.* at 80.

The Court is of the opinion that reference to a master would not materially aid in the disposition of this case. While the issues in this case are concededly complex and the documentary and other evidence at trial will undoubtedly be massive, the

---

proposition that in a case combining legal and equitable claims, the legal claim should be tried before the jury prior to determination of the equitable claims. Inasmuch as the results of the accounting could be presented to the jury in the instant case for their consideration, an accounting would not deprive Frigitemp of a right to jury trial in this case. For reasons set out hereinabove, however, the Court is of the opinion that an accounting is not justified in this case.

**2.** In this Motion for Summary Judgment Litton bears the burden of showing that there are no genuine issues as to any material facts pertaining to their entitlement to an accounting. *See, e.g., Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Nunez v. Superior Oil Company*, 572 F.2d 1119, 1123–24 (5th Cir.1978); *Gossett v. Du-Ra-Kel Corporation*, 569 F.2d 869, 871–72 (5th Cir.1978). Litton has not met this burden.

Court has already gained some familiarity with the dispute from having ruled on this and other motions and judicial efficiency and economy would best be served by refusing to appoint a master, even on a limited basis, in this case. Accordingly, Litton's Motion for the Appointment of a Master is hereby denied.

## CONCLUSION

There being no contractual or equitable basis for an accounting in this action, Litton's Motion for an Accounting is hereby denied. There being no justification for the appointment of a master in this case, Litton's Motion for Appointment of a Master is also denied.