United States Court of Appeals,

Fifth Circuit.

No. 96-60528.

Carl COTTINGHAM; Greenville Auto Mall, Inc., Formerly doing business as Greenville Buick Cadillac-Pontiac Co., Inc., Plaintiffs-Appellees,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellant.

Aug. 19, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before POLITZ, Chief Judge, DeMOSS, Circuit Judge, and DOHERTY,[1] District Judge.

PER CURIAM:

General Motors Corporation ("GM") appeals the jury award of $6,250.00 in compensatory damages and $600,000.00 in punitive damages to Carl Cottingham ("Cottingham") and Greenville Auto Mall, Inc. ("Greenville Auto Mall"), on the basis the district court erred in not granting GM's Motion for Judgment as a matter of law as to individual claims asserted by Cottingham, as Cottingham has no standing to bring suit against GM under the provisions of the Buick Motor Division Dealer Sales & Service Agreement ("Dealer Agreement") executed on November 1, 1990, between GM and Greenville Auto Mall, a Mississippi Corporation.

Further, GM appeals the district court's failure to grant summary judgment or judgment as a matter of law on Cottingham's and

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

1

Greenville's claims of breach of contract, breach of fiduciary duty and breach of implied duty of good faith and fair dealing, all flowing from the Dealer Agreement executed between GM and Greenville, and the subsequent award of compensatory and punitive damages based on the contractual claims of Cottingham and Greenville. Further, GM appeals the verdict rendered on the claim of common law breach of fiduciary duty under Mississippi law.

As we find, as a matter of law, that Cottingham does not have standing to pursue any of the claims made against GM under the terms of the Dealer Agreement, or under Mississippi law, and as Greenville Auto Mall, as the proper party to the Dealer Agreement failed to prove any damages relating to its claims under the Dealer Agreement, we set aside the jury's award of compensatory and punitive damages.

## Background

In 1993, Vickery Chevrolet Oldsmobile, Inc. ("Vickery") filed for Chapter 11 bankruptcy protection in the Northern District of Mississippi. During the course of the bankruptcy proceedings, Benjamin Beverly was GM's preferred candidate to purchase Vickery's assets and to replace Vickery as GM's Chevrolet/Oldsmobile dealer in Greenville, Mississippi.

Thereafter, however, Carl Cottingham, Dealer Operator for Greenville Auto Mall, Inc. of Greenville, Mississippi, a Buick, Pontiac and Cadillac dealership, expressed an interest in buying the Vickery assets. Subsequently, both Beverly and Cottingham filed motions with the bankruptcy court seeking approval for their

2

respective proposals to purchase the Vickery assets.

During the pendency of the motions, but prior to the hearing before the bankruptcy court, Beverly's attorney, Paul Mathis,[2] issued a subpoena to GM requesting information surrounding potential purchasers, including the Greenville Auto Mall, Inc. GM sought to limit the scope of the production, however, was unsuccessful and thereafter responded to the subpoena by producing the documents requested. Armed with the subpoena response during the hearing held by the bankruptcy court on Beverly's and Cottingham's competing motions, Mathis cross-examined Cottingham regarding a $900,000.00 financial loss reported in the financial records of Greenville Auto Mall, Inc. which GM had produced in response to the Mathis subpoena. Cottingham alleges the cross-examination caused him great embarrassment and internal problems among the other shareholders within Greenville Auto Mall, Inc.

Cottingham and Greenville Auto Mall, Inc. subsequently sued GM for breach of contract, breach of fiduciary duty, breach of the implied duty of good faith in fair dealing, defamation, and intentional infliction of emotional distress, based on GM's disclosure of the information requested by the subpoena and the cross-examination by Mathis of Cottingham during the bankruptcy hearing. Plaintiffs' Complaint sought both compensatory and

---

[2]Beverly, as a minority candidate, had been pledged financial support through GM's Holding Division, thus Mathis, as his attorney, was seeking to facilitate the acquisition of the Vickery assets by his client, Beverly.

3

punitive damages.

Despite motions filed on behalf of GM to dismiss all claims for failure to state a claim, for summary judgment, and for judgment as a matter of law, the case was ultimately submitted to the jury on those claims involving breach of the Dealer Agreement, breach of fiduciary duty, and breach of the duty of good faith.[3] The jury returned a verdict in favor of Cottingham and Greenville Auto Mall, Inc., and against GM in the amount of $6,250.00 in compensatory damages (actual) and $600,000.00 in punitive damages, finding GM had breached the terms of the Dealer Agreement by disclosing the financial information of Greenville Auto Mall, Inc. to Mathis in response to the subpoena; that GM breached the implied duty of good faith and fair dealing under the Dealer Agreement; and that GM owed plaintiffs (Cottingham and GM) a fiduciary duty and GM had breached that fiduciary duty.[4]

Discussion

The district court's interpretation of a contract or in this case, the Dealer Agreement, is a conclusion of law reviewable *de*

_____

[3]Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court dismissed Plaintiffs' claims for intentional infliction of emotional distress and defamation. This Court presumes that those claims were Cottingham's individually as Greenville Auto Mall, Inc., a corporation, could suffer no such injury. Cottingham and Greenville Auto Mall were allowed to amend the Complaint to allege a claim of civil conspiracy; however, this claim was dismissed prior to submission of the case to the jury when the district court judge impliedly granted GM's motion for judgment as a matter of law by declining to instruct the jury on civil conspiracy and placed no question on the jury interrogatories reflecting the claim of civil conspiracy.

[4]Jury Interrogatories, Questions 1-5.

*novo* on appeal. *Ham Marine, Inc. v. Dresser Industries, Inc.,* 72 F.3d 454, 458 (5th Cir.1995). Further, an initial determination of whether the contract is ambiguous is also reviewed *de novo. Thrift v. Estate of Hubbard,* 44 F.3d 348, 357 (5th Cir.1995).

The issue of whether or not Carl Cottingham had personal or individual standing via the Dealer Agreement to pursue his claims against GM was preserved on appeal by GM's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) and thus is properly before this Court. *McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 672 (5th Cir.1993).

GM, on appeal, argues Michigan law should apply to all claims based on the clear provisions of the Dealer Agreement. Appellees, Cottingham and Greenville, argue that GM failed to properly preserve for appeal the application of Michigan law to those claims based on breach of the Dealer Agreement and thus waived the issue of the application of Michigan law by not specifically referencing Michigan law as controlling in the pretrial order. *Valley Ranch Development Co., Ltd. v. F.D.I.C.,* 960 F.2d 550, 554 (5th Cir.1992).

This Court cannot agree with appellee's argument. Article 17.12 of the Dealer Agreement clearly states that Michigan law governs the Agreement.[5] One of defendant's jury instructions on

[5]*17.12 Applicable Law.*

> This Agreement is governed by the laws of the State of Michigan. However, if performance under this Agreement is illegal under a valid law of any jurisdiction where such performance is to take place, performance will be modified to the minimum extent necessary to comply with

the contract given by the district court, was derived from *Hubbard Chevrolet Co. v. General Motors Corp.,* 873 F.2d 873 (5th Cir.) *reh'g denied,* 878 F.2d 1435, *cert. denied,* 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989) and its application of Michigan law and was not objected to by plaintiffs. In *Hubbard,* this Court followed the contract's choice of Michigan law in the dealer agreement almost identical to the contract at issue. The jury instruction surrounding the tort claim pursuant to the common law claim of breach of the fiduciary obligation was, it seems, derived from Mississippi law.

As GM referenced the Dealer Agreement and thus its choice of law provision in its submissions to the court, objected to the application of Mississippi law and obtained a jury instruction couched under Michigan law, GM did not waive its right to appeal this issue. However, this Court need not reach that issue, as the provisions relied on in this Court's interpretation of the language of the Dealer agreement are clear and unambiguous and as such their interpretation would be the same under either the law of Michigan or Mississippi.

## Dealer Agreement

Each of the claims submitted to the jury by the district court is based upon or flows from the 1990 Dealer Agreement, executed between Buick Motor Division of General Motors Corp., a Delaware Corporation ("Buick") and Greenville Auto Mall, a

---

such law if it was effective as of the effective date of this Agreement.

6

Mississippi Corporation ("Dealer").[6]

_____

[6]Pertinent provisions of the contract are as follows:

The glossary of the Dealer Agreement states: Dealer—The corporation, partnership or proprietorship that signs the Dealer Agreement with Division.

Dealer Agreement—The Dealer Sales & Service agreement, including the Agreement proper that is executed, the Standard Provisions, all of the related addenda, the accounting and Service Policies and Procedures Manuals, and the Terms of Sale Bulletins.

The third section of the preamble states as follows:

DEALER OPERATOR

Dealer agrees that the following Dealer Operator will provide personal services in accordance with Article II of the Standard Provision:

Carl Y. Cottingham.

The thirteenth section of the preamble states:

EXECUTION OF AGREEMENT

This Agreement and related agreements are valid only if signed:

(a) on behalf of the Dealer by its duly authorized representative and, in the case of this Agreement, by its Dealer Operator; and

(b) on behalf of Buick by the General Sales and Service Manager and his authorized representative.

Greenville Auto Mall is designated as the Dealer Firm Name, and by his signature on May 13, 1991, Carl Y. Cottingham is designated as the Dealer Operator.

Article 2. Dealer Operator

This is a Personal Service Agreement entered into in reliance on the qualifications of Dealer Operator identified in Paragraph Third, and on Dealer's assurance that Dealer Operator will provide personal services by

7

Section 11.3 of the Dealer Agreement forms the specific basis for Cottingham's and Greenville's claims under the terms of the Dealer Agreement. Both plaintiffs claim GM supplied documentation requested by a federal subpoena issued on behalf of Paul Mathis in the bankruptcy proceeding in breach of GM's obligations under § 11.3. Section 11.3 provides:

11.3 Confidentiality of Dealer Data

Division agrees not to furnish any personal or financial data submitted to it by Dealer to any nonaffiliated entity unless authorized by Dealer, required by law, or pertinent to judicial or administrative proceedings, or to proceedings under the Dispute Resolution Process.

Under the clear provisions of § 11.3, the duty of confidentiality is owed only to the "Dealer." "Dealer" is a defined term under the Dealer Agreement as the "corporation, partnership or proprietorship that signs the Dealer Agreement with the Division." Greenville Auto Mall, the corporation, signed the Dealer Agreement by way of Carl Cottingham, acting on behalf of the corporation.

Carl Cottingham, individually, is defined as the "Dealer Operator" under the Agreement. By definition, the "Dealer Operator," Cottingham, merely must own at least 15 percent of the Dealership. Therefore, Cottingham, individually, is a shareholder

exercising full managerial authority over Dealership Operations. Dealer Operator will have an unencumbered ownership interest in Dealer of at least 15 percent at all times. A Dealer Operator must be a competent business person, and effective manager, must have demonstrated a caring attitude toward customers, and should have a successful record as a merchandiser of automotive products and services or otherwise have demonstrated the ability to manage a dealership. The experience necessary may vary with the potential represented by each dealer location.

in the corporation/Dealer, Greenville Auto Mall, and an employee, as Dealer Operator of the corporation/Dealer, Greenville Auto Mall.

It is clear § 11.3 does not require the duty of confidentiality to run to the benefit of the Dealer Operator, i.e., Cottingham, rather the duty of confidentiality runs only to the benefit of the Dealership, Greenville Auto Mall, Inc. Therefore, no duty of confidentiality is owed to Cottingham, individually, pursuant to the Dealer Agreement.

The express language of the Dealer Agreement forecloses any benefit of the contract from running to anyone not a party to the Agreement; Cottingham, individually, is not a party to the contract. Section 17.9 reflects:

17.9 No Third Party Benefit Intended.

This Agreement is not enforceable by any third parties and is not intended to convey any rights or benefits to anyone who is not a party to this Agreement.

The Agreement is between the parties, Buick Motor Division, Dealer Sales & Service, and Greenville Auto Mall, a Mississippi corporation. As such, Carl Cottingham, individually, is not a party to the Agreement under the terms of the Dealer Agreement.

No fiduciary obligations are created by the Agreement as § 17.1 provides:

This Agreement does not make either party the agent or legal representative of the other for any purpose, nor does it grant either party authority to assume or create any obligation on behalf of or in the name of others. No fiduciary obligations are created by this Agreement.

Consequently, no contractual obligation or benefit plead by Cottingham flows to Cottingham, individually, and therefore

9

Cottingham is not the proper party to bring suit on an alleged contractual breach.

This Court finds of interest the Seventh Circuit case of *Carney v. General Motors Corporation,* 23 F.3d 1154 (7th Cir.1994), wherein the Seventh Circuit also found that a Dealer Operator, as an individual, was not a proper party to bring suit against GM for damages based on GM's failure to allow a change in the location of the GM dealership, Carney Chevrolet. The Seventh Circuit held,

> But Mr. Carney [the Dealer Operator] does not have an individual right to "operate" a GM dealership in the Murphy building or anywhere else. This right belongs to Carney Chevrolet, and not to an individual corporate shareholder, even if he is the sole shareholder and chief executive.... *See also Twohy v. First Nat. Bank of Chicago,* 758 F.2d 1185, 1194 (7th Cir.1985) (holding that under general principles of United States corporate law, a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation). Therefore, this cause of action belongs to Carney Chevrolet and not Al Carney as an individual.

*Carney,* 23 F.3d at 1157 (some citation omitted).

Cottingham argues however, that the Third Circuit case of *In re Headquarters Dodge, Inc.,* 13 F.3d 674 (3d Cir.1993), controls and identifies the Dealer Agreement as a Personal Service Agreement, such that Cottingham would have standing, individually, to bring his claims against GM under the Dealer Agreement. We disagree.

The issue addressed in *Headquarters Dodge* involved a ruling by the bankruptcy court that GM had the right to exercise a right of first refusal to purchase the dealership assets, regardless of whether the proposed buyer was qualified to be a dealer. The

10

trustee and purchaser appealed, and the Third Circuit remanded on the basis that genuine issues of material fact precluded a granting of summary judgment by the bankruptcy court.

Appellees argue that because GM in *Headquarters Dodge* characterized its Dealer Agreement as a Personal Service Agreement in the context of GM's right of first refusal, GM should be precluded from claiming otherwise in this case and therefore, Cottingham should have standing to bring his individual claims based on the Dealer Agreement. Again, we disagree. *Headquarters Dodge* is factually distinguishable from the case before this Court. In *Headquarters Dodge,* GM asserted that pursuant to § 12.2 of the Dealer Agreement, GM had a right to control who could become a Dealer Operator pursuant to Article 2 of the Dealer Agreement. This position is not inconsistent with the terms of the Dealer Agreement and has no bearing on the clear and unambiguous terms of the Dealer Agreement as they relate to the present controversy between GM and Cottingham.

Further, this Court does not find the holding or statements contained in *Headquarters Dodge* to be at odds with this Court's interpretation of the Dealer Agreement as bolstered by *Carney.* When determining whether a non party has standing to sue for damages for breach of that contract, this Court finds, as a matter of law, that the non party, Cottingham, has no individual standing to sue for breach of the Dealer Agreement.

Accordingly, for the reasons stated, this Court finds Carl Cottingham, individually, has no standing to assert the claims made

11

by him, individually, against GM based on breach of the Dealer Agreement executed on November 1, 1990 between GM and Greenville Auto Mall. Consequently, the district court erred in denying GM's motion. Cottingham's claims against GM couched under the contract must fall.

Judgement as a Matter of Law—Damages Attributable to the Corporation, Greenville Auto Mall, Inc.

Having found that Cottingham has no standing to assert the claims made and thus no basis for the damage award, we must now determine the *sufficiency of the evidence* presented to support the damages awarded to the remaining plaintiff, Greenville Auto Mall. *Polanco v. City of Austin, Texas,* 78 F.3d 968, 973-74 (5th Cir.1996).

During hearing held by the district court pursuant to Fed.R.Civ.P. 50, GM objected to the jury instructions as they failed to distinguish between the claims of Cottingham and those of Greenville Auto Mall, the corporation. In the ensuing discussion, the district court stated, "[f]rankly, there are not any [damages] that are attributable to the corporation." Thus, the district court impliedly granted GM's motion for judgment as a matter of law with respect to the claims made by Greenville Auto Mall when it found no damages were suffered by Greenville Auto Mall. Consequently, the district court found there was no factual basis for a damage award to Greenville Auto Mall.

The record fully supports the district court's finding that the corporation, Greenville Auto Mall, as Dealer, did not suffer damage flowing from Greenville Auto Mall's claims against GM

12

pursuant to the Dealer Agreement.  The record reflects no evidence to support any suggestion that Greenville Auto Mall lost business or sales as a result of the production of documents by GM to the subpoena issued by Mathis or the cross-examination of Cottingham at the bankruptcy proceeding, or that any lender subsequent to the bankruptcy proceeding disapproved Greenville Auto Mall's previously established line of credit.[7]  Thus, any damages awarded under breach of contract attributed to Greenville Auto Mall, Inc. must fall.

### Breach of Fiduciary Duty Under Mississippi Law

GM also appeals the jury finding that GM breached a fiduciary duty based in tort under Mississippi law.  Cottingham and Greenville Auto Mall urge the Mississippi Supreme Court's holding in *Parker v. Lewis Grocer Co.,* 246 Miss. 873, 153 So.2d 261 (1963) allows their claims.  In *Parker,* the Mississippi Supreme Court found that certain contractual relationships, in and of themselves, might give rise to a fiduciary duty under Mississippi common law. The Fifth Circuit in *Carter Equipment Co. v. John Deere Industrial Equip. Co.,* 681 F.2d 386 (5th Cir.1982), has interpreted *Parker* as holding that a fiduciary relationship may arise "when one party breaches the others [sic] trust or confidence by affirmatively

---

[7]Plaintiff's response to General Motor's itemization of uncontested facts, paragraph 2 reflects, "[t]he plaintiffs admit that the Bankruptcy Court opined that the best interests of all the parties to the bankruptcy proceeding would be served by the court's approval of Benjamin Beverly's offer for the Vickery assets." Thus, the record reflects that the cross-examination by Mathis, Beverly's lawyer, did not effect the outcome of the bankruptcy proceedings.

acting in a way that produces the other party's loss." *Carter,* 681 F.2d at 392.

*Carter* further states,

The rule is that a party breaches his fiduciary duty by actively utilizing some power, control, or opportunity to destroy, injure, or gain a preferential advantage over the party with whom it has a mutual interest. The parties have a mutual interest, by definition. As a result, there is an obligation not to affirmatively undermine one another. This does mean a party must take unnecessary risks or forego seeking its individualized interests pursuant to their bargain. (emphasis added)

*Id.*

However, *Carter* further instructs:

If the parties, in seeking their individualized interests, comply with the terms of a contract in which they are also parties, it would be difficult to find a breach of a fiduciary duty. Although fiduciaries have mutual interests, they also have individual goals. If part of their relationship is set out in a contract, the parties have affirmatively recognized, in part, those individual interests. Unless the contractual terms are unconscionable, illegal, or violative of public policy, fiduciaries, as a practical matter, acknowledge that activity in conformance with the terms of the contract cannot amount to misconduct that generally constitutes a breach of a fiduciary duty.

*Id.*

Cottingham is not a party to the Dealer Agreement. Consequently, *Parker* does not apply. GM also argues § 17.1 of the Dealer Agreement specifically prohibits the creation of such common law fiduciary obligation, "[n]o fiduciary obligations are created by this Agreement." This Court need not reach the issue of whether or not the clear language of the Dealer Agreement can stand or is "violative of public policy" under Mississippi law, as this Court finds that Cottingham, individually, is not a party to the contract and as such has no standing to allege the common law breach of

14

fiduciary duty flowing from the contract. Cottingham has no relationship, contractual or otherwise, with GM from which the fiduciary obligation can flow. Only Greenville Auto Mall has such a relationship with GM, the Dealer Agreement. Cottingham is not the franchisee under the contract, nor does he have any other relationship with GM that could give rise to a fiduciary relationship as defined by the Mississippi Supreme Court in *Parker.*

In *Parker,* the relationship between the parties was that of landlord/tenant, under a lease agreement. The tenant, Lewis Grocer, claimed that the landlord, Parker, had violated his trust by leasing additional land to another tenant for use in the supermarket business. The fiduciary relationship grew from the contractual relationship.

In *Carter,* the relationship was that of franchisee/franchisor, wherein Carter, the franchisee, sought damages against the franchisor, John Deere, based on the termination of Carter's franchise with Deere. Again, the fiduciary obligation grew from the contractual relationship.

In order for a claim of fiduciary duty to arise under Mississippi common law, there must be a relationship of some form which creates an obligation "not to affirmatively undermine one another." *Carter,* 681 F.2d at 391. In each of the cases cited, the relationship grew from a contract. Cottingham is not a party to the contract and had no relationship outside of the Dealer Agreement from which a common law obligation of fiduciary duty could flow.

15

The jurisprudence, also, is clear that any damage resulting from disclosure under a contract such as that by GM pursuant to the subpoena issued in the bankruptcy hearing, must have been directly sustained by the franchisee, Greenville Auto Mall;  the district court found no such loss.  *Id.* at 392 n. 15.

## Conclusion

Accordingly, this Court VACATES, as a matter of law, the jury verdict granting compensatory and punitive damages to Cottingham and Greenville Auto Mall, and RENDERS judgment in favor of General Motors Corporation, DISMISSING in their entirety the claims of Carl Y. Cottingham and Greenville Auto Mall, Inc. against General Motors Corporation.

16