**Bernita WARD, et al**

v.

**LIFE INVESTORS INSURANCE COMPANY OF AMERICA, et al.**

**Civil Action No. 2:03cv00371–KS–JMR.**

United States District Court, S.D. Mississippi, Hattiesburg Division.

June 29, 2005.

**884**

Eddie J. Abdeen, Eddie J. Abdeen, Attorney, Sam S. Thomas, Underwood/Thomas, PC, Madison, MS, Stephen L. Gowan, Boutwell & Gowan, PLLC, Hattiesburg, MS, for Plaintiffs.

Billy Berryhill, Office of the Attorney General, J. William Manuel, Margaret Oertling Cupples, Bradley, Arant, Rose & White, LLP, Jackson, MS, Markham R. Leventhal, Jorden Burt, LLP, Miami, FL, Alexander A. Alston, Jr., Claire W. Ketner, Brunini, Grantham, Grower & Hewes, Jackson, MS, for Defendants.

## MEMORANDUM, OPINION AND ORDER

STARRETT, District Judge.

Plaintiffs Bernita Ward, Sandra B. Rials, Patricia Ann Ross, Charles V. Moak, Johnny Greene, Glenn E. Givens, Jim Clay, Jeanette Cruz, Charlotte Rogers and Jerry D. Williams (hereinafter "plaintiffs") bring this action against Life Investors Insurance Company of America, Aegon Direct Marketing Services, Inc., Family Heritage Life Insurance Company of America and John Does A–Z for accounting, breach of contract, breach of fiduciary duty, tortious interference with contract, interference with prospective business advantage, twisting, misappropriation of trade secrets, violation of Mississippi Uniform Trade Secrets Act, negligence, civil conspiracy, negligent infliction of emotional distress, slander and fraudulent concealment. Now before the Court are motions to dismiss filed by Life Investors Insurance Company of America (hereinafter "Life Investors"), Aegon Direct Marketing Services, Inc., (hereinafter "Aegon"), and Family Heritage Life Insurance Company of America (hereinafter "Family Heritage"). The Court has considered the motion, the responses and the memoranda of the parties and does hereby find that count one (accounting), count three (breach of fiduciary duty), count five (interference with prospective business advantage), count six (twisting), count seven (misappropriation of trade secrets), count eight (violation of Mississippi Uniform Trade Secrets Acts), count nine (negligence), count eleven (negligent infliction of emotional distress), count twelve (slander) and count thirteen (fraudulent concealment) should be dismissed as to all defendants and does hereinafter state the reasons therefor. The motion as to count two (breach of contract) is sustained as to Family Heritage and Aegon, and overruled as to Life Investors. The motion as to count four (tortious interference with contract) is sustained as to Life Investors and Aegon, and overruled as to Family Heritage. The motion as to count ten (civil conspiracy) is overruled as to all defendants.

## FACTUAL BACKGROUND

Plaintiffs are former insurance agents who worked under various agency contracts with Life Investors[1]. The ten

---

1. Equity National Life Insurance Life Insurance Company is the predecessor of Life In-

plaintiffs reside in five different states and have entered into over seventy independent contracts, amendments and commission schedules dating back as far as 1974. The plaintiffs' respective contracts were negotiated and executed in different places, at different times, covering different geographic areas and the sale of different policies at different commission rates to different policy holders. Plaintiffs' complaint consists of thirteen separate and distinct causes of action which will be addressed separately.

The plaintiffs, personally or through their subagents, sold insurance policies that were placed on the books of Life Investors. Pursuant to their agency agreements, plaintiffs were to be paid commissions, direct and override, from premiums collected on said policies. Plaintiffs' claim that they were wrongfully deprived of commissions due under their agency agreements, and allege a conspiracy amongst Life Investors, Aegon, and Family Heritage to deprive them of such commissions. According to the plaintiffs, there were two distinct components to the conspiracy; the "two thousand cancer rewrite program" and the "two thousand two policy replacement" scheme.

During the cancer rewrite program, the company allegedly replaced "unlimited" cancer benefit policies with lesser-value "limited" benefit policies. This program was carried out by the dissemination of customer lists by Life Investors to co-defendants Heritage and Aegon. Plaintiffs claim that this rewrite program was, in reality, a fraud perpetrated on unknowing and unsophisticated policyholders. Questions of fact remain as to what actually occurred.

The cancer rewrite program was allegedly followed in 2002 with a large scale policy replacement program. All of the agents of Life Investors were informed that their agency contracts would be terminated effective October 1, 2002, as a result of Life Investors decision to cease marketing through door-to-door agents. Plaintiffs allege that Life Investors, assisted by the other defendants, conducted the program in a way that tortiously interfered with the plaintiffs' respective renewal commissions. Plaintiffs claim that the result of the above programs was to intentionally deprive them of commissions to which they were entitled.

## ANALYSIS

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears, without a doubt, that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 85 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

The Court will address the claims in the order listed in the complaint.

### COUNT ONE—ACCOUNTING

██ An accounting is a "detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation. It is a statement in writing of debts and credits or of receipts and payments." *State ex rel King v. Harvey,* 214 So.2d 817, 819 (Miss.1968). A claim for an accounting seeks equitable

---

vestors and merged into Life Investors in June 1995. For purposes of convenience, references to "Life Investors" shall include Equity National unless otherwise specified.

relief. *City of Ridgeland v. Fowler,* 846 So.2d 210, 214 (Miss.2003). To state such a claim, as with any claim arising in equity, a plaintiff must allege an inadequate remedy at law. *Litton Sys., Inc. v. Frigitemp Corp.,* 613 F.Supp. 1386, 1389 (S.D.Miss. 1985). An inadequate remedy at law is a necessary prerequisite to a claim for an equitable accounting. There is no right to an accounting in this case because there is an adequate remedy at law. Further, plaintiffs' make no effort to argue their position that an accounting is appropriate and, therefore, count one (accounting) should be dismissed as to all three defendants.

COUNT TWO—BREACH OF CONTRACT

The plaintiffs' claim for breach of contract centers on what rights and obligations both Life Investors and their agent-plaintiffs were bound to observe regarding post-sale service of policyholders. Plaintiffs claim that they "did nothing to cause the lapse in the policies or to create dissatisfaction among the policyholders." As such, they have complied with their obligations under the contract, and are entitled to receive commission payments "vested" in them by their policy sales under the agency agreements. The plaintiffs further claim that Life Investors also had a contractual duty to abstain from soliciting coverage adjustments and offering renewal or replacement options to policyholders who were paying premiums on the policies sold by plaintiffs. In essence, they shared the same obligation not to "create dissatisfaction" or cause customers to tinker with their existing policies, which would necessarily endanger the writing agent's commission. Life Investors denies this contention, and claims to enjoy exclusive and uninterrupted rights to service their policyholders within the bounds of the agency contracts in question.

■ The plaintiffs state a claim for the possible existence of a contractual obligation on the part of defendant Life Investors to refrain from the alleged activity. If Life Investors represented to their agents that the company would not engage in rewrite programs when their agreements were struck, the plaintiffs might be able to prove that their agency contracts were breached by the subsequent actions of Life Investors. Life Investors itself admits that this is a "garden variety breach of contract case." This Court cannot conclusively state that plaintiffs can prove no set of facts which would establish their claim for breach of contract and, accordingly, defendants' motion to dismiss as to breach of contract should be denied as to Life Investors.

COUNT THREE—BREACH OF FIDUCIARY DUTY

Plaintiffs argue that their agency relationship with Life Investors was fiduciary as a matter of law. Their reasoning for this proposition is twofold. As agents of Life Investors, plaintiffs' rightly assert that they had a duty to act in the best interest, and not to the detriment, of their principal Life Investors. This is true. The corollary they offer to that position is that Life Investors, acting as their principal, had a similar legal duty to act only in the best interest of the plaintiffs. The plaintiffs support this line of logic with certain fact specific cases where this duty was recognized. *Shen v. Leo A. Daly Co.,* 222 F.3d 472, 477 (8th Cir.2000); *Lawrence Warehouse Co. v. Twohig,* 224 F.2d 493, 497 (8th Cir.1955); *Taylor v. Cordis Corp.,* 634 F.Supp. 1242, 1246 (S.D.Miss. 1986).

■ Plaintiffs argue that each respective contract with Life Investors arose out of and formed the basis for a fiduciary relationship *among* them. Mississippi law

recognizes four factors that might convert a standard contractual relationship to one fiduciary in character, including where:

(1) The activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both;

(2) Where the parties have a common interest and profit from the activities of the other;

(3) Where the parties repose trust in one another; and

(4) Where one party has dominion and control over the other.

*Hopewell Enterprises, Inc., v. Trustmark Natl. Bank*, 680 So.2d 812, 816 (Miss.1996).

The Court in *Hopewell* also emphasized the purpose of the relationship is to protect a weaker party when "one person is in a position to exercise a dominant influence over the other" by characterizing the relationship as fiduciary. *Id.* In the existence of a fiduciary relationship, each party has a duty to refrain from "actively utilizing some power, control, or opportunity to destroy, injure, or gain preferential advantage over [the] party with whom it has a mutual interest." *Cottingham v. Gen. Motors Corp.*, 119 F.3d 373, 380 (5th Cir.1997) (internal citations omitted). However, so long as the terms of the contract are not unconscionable, "activity in conformance with the terms of the contract cannot amount to misconduct that generally constitutes a breach of a fiduciary duty." *Id.* Plaintiffs argue that a fiduciary relationship is necessarily created by the agency contracts with plaintiffs, and that the fiduciary duty links the activities of both Life Investors and their agents.

A factually analogous situation was confronted by a Texas court of civil appeals, where applying slightly more stringent Texas law, the court refused to find a fiduciary relationship between an insurance company and one of its agents. *Kar-*

*dell v. Union Bankers Ins. Co.*, 2002 WL 1809867 (Tex.App.-Dallas Aug.8, 2002) (not designated for publication). That court held that a "party's subjective trust is not sufficient to transform an arm's length transaction into a fiduciary relationship." *Id.* at *7.

■ The most applicable standard from this district came in *Furr Marketing, Inc. v. Orval Kent Food Co., Inc.*, 682 F.Supp. 884 (S.D.Miss.1988). In *Furr*, the court cited the treatise American Jurisprudence to hold that "as a matter of law, no fiduciary duty existed" between a broker of products and his principal. *Id.* Though the precise reasoning of the holding is unclear, it seems that the court was skeptical to import into the contractual relationship the added responsibility of a fiduciary duty, especially without any cognizable intent of the parties to be bound by such. There is nothing in the contract that is before this Court that indicates Life Investors desires to be bound in a fiduciary relationship to the plaintiffs. Based on the facts of this case, this Court will not read one into it. While the relationship between Life Investors and their agents shares some of the factors found in a fiduciary relationship, it does not exhibit them all. The agents were not under the "dominion and control" of the company in any sense more than is common for an insurance agency contract. Finding a fiduciary duty here would significantly extend the underlying rationale of the *Shen* case, which based its narrow holding on a highly fact-specific situation.

By extension, since there is no fiduciary duty between Life Investors and the plaintiffs, the claims by the plaintiffs against Aegon and Heritage for assisting in the breach of the that fiduciary duty should be dismissed as well. These defendants cannot be held liable for assisting a breach of a duty if no such duty existed.

COUNT FOUR—TORTIOUS INTER-FERENCE WITH CONTRACT

AND

COUNT FIVE—INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

■■ To sustain a claim for tortious interference with contract, plaintiffs must establish that an enforceable contract existed, and that the contract would have been performed, but for the interference of the defendants. *Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44, 48 (Miss. 1998). The common elements that plaintiffs must plead and prove to establish tortious interference with contract are as follows:

(1) That the acts were intentional and willful;

(2) That they were calculated to cause damage to plaintiffs in their lawful business;

(3) That they were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and

(4) That actual damage and loss resulted. *Id.*

The defendants cite *Shrewsbery v. Natl. Grange Mut. Ins. Co.*, 183 W.Va. 322, 395 S.E.2d 745 (W.Va.1990) as authority supporting their position. The court in *Shrewsbery* described the nature of the relationship between an insurance agent, the insurance corporation, and the insured, by saying that "an agent is but an incidental beneficiary to the contract between the insured and the insurance company." *Id.* at 748. Further, the "agent's right to commissions—his economic interests in the insurance contracts—is of no concern to the insured, and is solely a matter of contract between the agent and his principal, the insurance company." *Id.* In this pointed language, the Court rebutted the un-

derlying claim of the agent that his right to renewal commissions was vested, perpetual, or otherwise unassailable by the business activities of the insurance corporation itself.

The plaintiffs cite as opposing authority *Elwert v. Pilot Life Ins. Co.*, 77 Ohio App.3d 529, 535, 602 N.E.2d 1219, 1224 (Ohio App. 1 Dist.1991). The Ohio court held that "once an agent's right to have a renewal commission is earned, it may not be circumvented by later arrangement between the insurance company and the insured." *Id.* The Ohio court found that there were sufficient issues of fact pled to survive a motion to dismiss. *Id.* Though the Court noted substantial authority going the other direction, it would not allow the claim of tortious interference with the business relationship to be dismissed as a matter of law. *Id.* at 1225.

■ This Court chooses to adopt the reasoning of the West Virginia Supreme Court, and when it is coupled with the plaintiffs' own admission that they enjoyed no contractual relationship with the insured, the plaintiffs cannot sustain a claim of tortious interference with a contract that did not exist. It also should be noted that the plaintiffs admit that Life Investors worked to retain the commissions for them during the rewrite programs. Moreover, the plaintiffs have very little, if any, factual support for their proposition that defendants were attempting to circumvent the premiums due them.

■ The related cause of action, interference with a prospective business advantage, requires a plaintiff to prove the existence of a "prospective relationship" marked by a "reasonable likelihood that the relationship will come into existence." *Hubbard Chevrolet Co., v. Gen. Motors Corp.*, 682 F.Supp. 873, 878 (S.D.Miss. 1987), *aff'd*, 873 F.2d 873 (5th Cir.1989). Similar logic from the above claims can be

applied to the claim of interference with a prospective business relationship with the insured. Because their commission payments were derivative of a contract between Life Investors and the insured, the plaintiffs simply had no independent business relationship with which Life Investors could have interfered. The express terms of the agency contract with Life Investors barred plaintiffs from soliciting Life Investors' customers for any additional insurance products outside the scope of their agency. Therefore, if plaintiffs had attempted to forge a separate business relationship with the insured, they would have violated terms of their own contract with Life Investors and jeopardized their right to receive commission payments.

Though none of the defendants can be held liable for tortious interference with a contract or business advantage between the plaintiffs and the insureds, this does not dispose of the claim that Family Heritage tortiously interfered with the agency contracts between the plaintiffs and Life Investors. Because there is the possibility that the plaintiffs can establish facts that their contract with Life Investors prohibited the company from the rewrite activity in question, it follows that Family Heritage's involvement in that program might rise to the level of tortious interference with the plaintiffs' agency contracts. Although the defendants are right in noting that the plaintiffs' must prove that the breach in question would not have occurred but for Family Heritage's unjustifiable interference, the plaintiffs have alleged sufficient activity to avoid dismissal on this count against Family Heritage.

In summary, because the plaintiffs cannot establish a contractual relationship with the insured, cannot establish a prospective relationship with the insured, and are forbidden by their agency agreement of even attempting to establish one, the defendants cannot be held liable on either

of these claims. Hence, counts four and five should be dismissed entirely as to Aegon and Life Investors. However, the count of tortious interference with the plaintiffs' agency contracts with Life Investors against Family Heritage remains viable.

## COUNT SIX—TWISTING,

## COUNT SEVEN—MISAPPROPRIATION OF TRADE SECRETS,

## COUNT EIGHT—VIOLATION OF MISSISSIPPI UNIFORM TRADE SECRETS ACT

## AND

## COUNT TWELVE—SLANDER

The plaintiffs claims for twisting, misappropriation of trade secrets, violation of Mississippi Uniform Trade Secrets Act, and slander were never reargued by plaintiffs after being challenged in the defendant's motions to dismiss. Each suffer from serious legal and factual defects, addressed in the defendant's motions to dismiss and are without merit. This Court should note that the Fifth Circuit has shown a distaste for complaints such as these that are essentially a "shotgun approach to pleadings ... where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *S. Leasing Partners, Ltd. v. McMullen*, 801 F.2d 783, 788 (5th Cir.1986). The defendants have raised this issue and while this Court chooses not to dismiss the complaint in its entirety, the parties are admonished to not waste litigants' or courts' time with frivolous and factually void counts.

## COUNT NINE—NEGLIGENCE

The plaintiffs' claim for negligence against the defendants is not cognizable in either the complaint itself or the response to the motion for dismissal. Within this count, the plaintiffs fail to allege facts nec-

essary to establish a legal duty or standard of care, allege no facts necessary to establish breach of that duty, and allege no facts that would establish either the actual proximate or legal cause of such breach to their purported injuries. Plaintiffs argue that it would be necessary to establish this count by expert testimony, but have not attempted to set forth requisite facts even for notice pleadings. Therefore, this count should be dismissed as to all defendants.

## COUNT TEN—CIVIL CONSPIRACY

■ Under Mississippi law, a civil conspiracy is simply a combination of persons who conspire for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully. *Shaw v. Burchfield,* 481 So.2d 247, 255 (Miss. 1985). Mississippi follows the rule of almost all jurisdictions in uniformly requiring that civil conspiracy claims be predicated upon an underlying tort that would be independently actionable. *Wells v. Shelter Gen. Ins. Co.,* 217 F.Supp.2d 744, 755 (S.D.Miss.2002).

■ The plaintiffs have successfully stated a claim for breach of contract against Life Investors and a claim for tortious interference with contract against Family Heritage. In connection with these two claims, the plaintiffs have alleged that the tortious interference, which itself allegedly effectuated the breach of the agency contracts, came about as a result of a conspiracy between Family Heritage, Aegon, and Life Investors. Because the plaintiffs make pointed and specific factual allegations as to how these underlying events came about, it follows that they have successfully stated a claim that the defendants conspired together to assist the alleged tortious activity of Family Heritage. Although there are factual conflicts, particularly with regard to Aegon's participation in meetings allegedly held in furtherance of the conspiracy, the factual and legal inferences weighed in favor of the non-moving party allow the claim of conspiracy to remain viable against all defendants.

## COUNT ELEVEN—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The plaintiffs fail to allege any facts that would present a proper question as to defendants' purported intentional, gross, or negligent infliction of emotional distress on the plaintiffs. The crux of the plaintiffs claim is that "when a person is relying on commission payments to pay bills ... and these are eliminated ... a fact question of this theory seems to exist." This argument is patently absurd.

■ In an order to sustain an award for infliction of emotion distress, the court examines not the subjective mind set or plans of the plaintiffs, but the motive and intent of the acting defendants. As such, the plaintiffs have not alleged any facts that would allow a jury to conclude that the defendants' actions toward the plaintiffs were "malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River Forest Prods., Inc. v. Ferguson,* 662 So.2d 648, 659 (Miss. 1995). Moreover, the plaintiffs have failed to plead any activity by defendants that goes "beyond the bounds of decency" or is "utterly intolerable in a civilized community." *Langston v. Bigelow,* 820 So.2d 752, 757 (Miss.App.2002) (internal citations omitted). As such, this count should be dismissed as to all defendants.

## COUNT THIRTEEN—FRAUDULENT CONCEALMENT

■ Plaintiffs attempt to salvage the inherent statute of limitations bar to this claim by alleging the defendants fraudulently concealed evidence, which if true would allow the claim to survive such a

defense. However, the plaintiffs have not plead this fraud allegation with enough specificity to survive dismissal under Rule 9(b). Therefore, this count should be dismissed as to all defendants.

## OTHER ISSUES

It is noted that the defendants reserve the issue of "choice of law" until a later time and this Court will honor that reservation. Additionally, defendants argue that plaintiffs' claims are barred under the expressed terms of their contracts. This Court has ruled that the breach of contract claim remains viable, but it would be subject to defenses proven by defendants. Discovery has not been concluded in this case and the Court notes that the defendants will be allowed to urge this affirmative defense at a later time.

## ORDER

IT IS THEREFORE ORDERED that the Motion to Dismiss counts one (accounting), three (breach of fiduciary duty), five (interference with prospective business advantage), six (twisting), seven (misappropriation of trade secrets), eight (violation of Mississippi Uniform Trade Secrets Act), nine (negligence), eleven (negligent infliction of emotional distress), twelve (slander), and thirteen (fraudulent concealment) is hereby sustained as to all defendants. The Motion to Dismiss count two (breach of contract) is hereby sustained as to Family Heritage and Aegon, and overruled as to Life Investors. The Motion to Dismiss count four (tortious interference with contract) is hereby sustained as to Life Investors and Aegon, and overruled as to Family Heritage. The Motion to Dismiss count ten (civil conspiracy) is hereby overruled as to all defendants. The parties are instructed to contact Chief Magistrate Judge John Roper within ten (10) days regarding the case management conference and case management order.